**In re Bobby Joe EDWARDS, Debtor.**

**Bankruptcy No. 13-83-01463 MA.**

United States Bankruptcy Court,
D. New Mexico.

Aug. 27, 1984.

See also, Bkrtcy., 51 B.R. 790.

Daniel J. Behles, Albuquerque, N.M., for debtor.

Gary B. Ottinger, Albuquerque, N.M., Chapter 13 Trustee.

John F. Caffrey, Albuquerque, N.M., for Citizens Bank.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for confirmation of the debtor's Chapter 13 plan and to hear the objection of Citizens Bank to the confirmation of the plan.

At the hearing on confirmation Citizens Bank objected on three grounds. First that the debtor had over $100,000.00 in unsecured debt and therefore, was not qualified to be a debtor under Chapter 13. 11 U.S.C. § 109(e). The second ground was that since the unsecured debt to Citizen's Bank is nondischargeable under a Chapter 7, the terms of the plan resulted in the Bank receiving less in the Chapter 13 than it would from a proceeding under Chapter 7. Finally, the bank contends that the plan is not proposed in good faith.

The hearing on the debtor's plan disclosed the history of the debtor and of the debt owed to Citizens Bank as follows: from 1979 through 1981 the debtor was a loan officer at Citizens Bank, during which time he embezzled over $70,000.00. The embezzlement was discovered, the debtor was prosecuted, and was sentenced to three years imprisonment upon a guilty plea to charges of misapplication of bank funds. Upon his release from prison the debtor filed amended tax returns for the applicable years, reporting the embezzled funds as income. This resulted in $20,000.00 of tax liability owed for those years, and the debtor filed a Chapter 13 petition in December of 1983, in order to gain the time necessary to allow him to pay that amount to the Internal Revenue Service. The debtor's plan calls for plan payments of $320.74 per month the first year, with payments to be increased by $40.00 per month each succeeding year for five years. The debtor's income, when compared with monthly expenses and child support obligations, will not permit this Court to find a larger plan payment feasible, even if the debtor proposed to attempt an increased payment. The Bank's objection comes from the fact that, after payment of administrative expenses and the priority taxes, Citizens Bank will receive a divident of $1,000.00 although their proofs of claim reflect that they are owed somewhere between $80,000.00 and $109,000.00. Because the allowed amount of the Bank's claim will determine whether the debtor can qualify under Chapter 13, the Court advised the parties at the hearing in this matter that the debtor's objection to the Bank's claim would be set and heard if the Court made the determination that the plan was otherwise proposed in good faith and thus confirmable.

Accordingly, we now address the issues of the non-dischargeability of the debt and the good faith filing of the plan. They are not entirely separable in the context of this case, since the debtor has stipulated for purposes of this hearing, that the debt owed to the Bank would be nondischargeable in a Chapter 7 proceeding.

▪ At the outset, it is clear that the percentage of dividend received by unsecured creditors will not, in and of itself, be grounds for denying the confirmation of a plan, assuming that the creditors get at least as much as they would in a liquidation proceeding. *Flygare v. Boulden* (In re Flygare) 709 F.2d 1344 (10th Cir.1983). *Flygare* directs that in each individual case, the Court inquire "into whether the plan abuses the provisions, purposes or spirit of Chapter 13." (citation omitted) *Id.* at 1347. That determination is to be made by considering several factors which have been reviewed and recited in many cases, including one in this district, *In re Eppers*, 38 B.R. 301, (Bankr.D.N.M.1983).

▪ This Court has already found no surplus of funds with which the debtor could increase the plan payment and has noted that the plan is for the maximum time allowed by the Code. The lines between the other factors become blurry because of the manner in which the debt to

the bank was incurred. However, the Court finds that although the parties agreed that that debt is nondischargeable, that does not resolve the issue of motivation in filing. The debtor has been imprisoned for the embezzlement, and the Bank offered nothing which could lead the Court to question the debtor's sincerity in wishing to avoid further criminal prosecution for tax evasion. Without doubt, the act of embezzlement was an act of bad faith; it was an act for which the debtor was prosecuted, and an act for which the debtor was imprisoned. As in *Eppers, supra,* this creditor has nothing to gain from the debtor which the debtor has not already given. A civil judgment, even if nondischargeable, gains nothing if the debtor is judgment proof. If the Bank chooses to drag the debtor through fourteen years of "deathwatch" as the *Eppers* court called it, as a form of revenge, then we can only observe that the Bank has already had its revenge. The debtor has already served his time. This Court will not sentence him to more, when the creditor cannot benefit from it and the debtor can only be harmed. We can only repeat the words of Judge Rose as they apply here:

> "[The debtor] has shown himself capable of deception, but if deception is involved in this bankruptcy, no one has been able to point it out. If the Bank wants revenge, it can push for criminal sanctions. If the Bank wants to get even, it must abide with what the debtor [is] able to do, and live with the plan. The "fresh start" is more than a debtor's cliche. It is a realization that there comes a time when debtors and creditors reach an impasse from which both must be extricated. The Bank and the Debtor both made mistakes; the Constitution and the Congress provide the way out." *Eppers, supra,* at 303.

In the instant case, the "revenge" has already been achieved; while the Bank's desire to draw blood is understandable, it is nonetheless not without limit. The United States District Court sentenced the debtor to three years in prison. Where there has been no showing of bad faith in the propos-al of the plan, this Court will abide by the implicit finding of that sentence: namely that three years in prison is enough.

This Court finds that the debtor has proposed his Chapter 13 Plan in good faith and that it should be confirmed if the debtor is eligible to be a Chapter 13 debtor under Section 109(e). Accordingly, this Court will hear the debtor's objection, if the Court finds that the debtor meets the Section 109(e) requirements, the Court will enter an order confirming the Chapter 13 Plan.

An appropriate order shall enter.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.