**In re Arthur WINSTON, Christina S. Winston, Debtors.**

**No. 6:03–BK–08448–KSJ.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

April 14, 2004.

Jeanne A. Kraft, Peter N. Hill, Wolff, Hill, McFarlin & Herron, P.A., Orlando, FL, for Debtors.

Laurie K Weatherford, Winter Park, FL, Chapter 13 Trustee.

### MEMORANDUM OPINION GRANTING CHAPTER 13 TRUSTEE'S MOTION TO DISMISS CASE AND SUSTAINING CREDITOR'S OBJECTION TO CHAPTER 13 PLAN

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on February 3, 2004, on the Trustee's Motion to Dismiss Debtors' Chapter 13 Case (the "Motion") (Doc. No. 42) in which the Chapter 13 Trustee, Laurie K. Weatherford, asserts that the debtors' Chapter 13 case should be dismissed because their non-contingent, liquidated, unsecured debts exceed the $290,525 debt limit contained in Section 109(e) of the Bankruptcy Code.[1] The same grounds for dismissal are raised in an Objection to the Debtors' Chapter 13 Plan filed by Richard Murphy (the "Objection") (Doc. No. 49). The debtors filed a Response to the Trustee's Motion (the "Response") (Doc. No. 44), asserting that they *are* eligible for relief under Chapter 13 because their non-contingent, liquidated, unsecured debts did not exceed $290,525 as of the petition date since one particular debt, a sizeable debt for attorney's fees and costs, was not liquidated until *after* they filed this case. Upon reviewing the pleadings, considering the evidence, the position of the parties, and the law, the court dismisses this Chapter 13 case finding that the debtors' unsecured debts exceeded the jurisdictional limits of Bankruptcy Code Section 109(e) on the petition date.

The debtors, Arthur and Christina Winston, were involved in a business in which

---

1. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

the creditor, Richard D. Murphy, was a 50 percent partner. After the partnership relationship deteriorated, the partners sued each other in state court. On April 18, 2002, a jury verdict was rendered in favor of Mr. Murphy and against the debtors. In accordance with the verdict, on July 11, 2003, a Final Judgment was entered against the debtors in the amount of $250,000. (Debtors' Exh. No. 1). In this Final Judgment, the state court reserved jurisdiction to "enter such other and further orders which may be proper under the circumstances, including awarding attorneys' fees and costs." (Debtors' Exh. No. 1). The debtors, Mr. and Mrs. Winston, knew the state court would assess attorney's fees against them in addition to the judgment amount because Mr. Murphy was the prevailing party in the litigation. The debtors also knew the amount of Mr. Murphy's attorney's fees and costs because Mr. Murphy's attorney sent them a letter, dated June 11, 2003, requesting fees of $86,792 and costs of $18,600.

However, before the state court had time to enter an order awarding the exact amount of attorney's fees and costs, the debtors filed this Chapter 13 case on July 22, 2003. Approximately two months later, this court entered an Order Granting Debtors' Motion for Relief from Stay (Doc. No. 33) which allowed Mr. Murphy to return to state court to obtain an award of attorney's fees and costs. The parties ultimately agreed that the debtors would pay $80,000 for fees and $15,000 for costs for a total amount of $95,000, roughly the same amount requested by Mr. Murphy's counsel shortly before this bankruptcy case was filed. Based on this agreement, the state court entered a second judgment approving the agreement on attorney's fees and costs on November 3, 2003 (the "Final Judgment for Attorney's Fees and Costs"). (Debtors' Exh. No. 3). Consistent with the entry of the Final Judgment for Attorney's Fees and Costs, Mr. Murphy filed a Proof of Claim in the amount of $345,000 with the Bankruptcy Court on November 13, 2003. The debtors do not dispute that they owe the full amount of $345,000.

The Chapter 13 trustee and Mr. Murphy now contend that the debtors are not eligible to be debtors under Chapter 13 of the Bankruptcy Code because the debtors' unsecured liabilities exceeded the jurisdictional limit of $290,525 as set forth in Section 109(e) of the Bankruptcy Code on the petition date. Section 109(e) provides that, "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $290,-525...may be a debtor under Chapter 13 of this title." [2] Certainly, $290,525 is less than the acknowledged debt due to Mr. Murphy of $345,000.[3]

The debtors contend, however, that they properly can be debtors under Chapter 13 because their debts totaled less than

---

**2.** On April 1, 2004, the $290,525 jurisdictional limit was adjusted and increased to $307,675 pursuant to Bankruptcy Code Section 104(b)(1). However, the adjusted amount does not apply to the debtors' bankruptcy case because they commenced their case prior to the adjustment date. 11 U.S.C. § 104(b)(3).

**3.** All parties agree that the debtors' other debts when added to the judgment amount of $250,000 are less than the jurisdictional limit of $290,525. Only when the $95,000 award for attorney's fees and costs is included does the total exceed $290,525. In the debtors' schedules, they list no other *personal* unsecured debts of any kind. They do list potential liabilities for *business* debts, such as guaranty liability on business leases and claims for attorney fees. For these business debts, the debtors listed "amount unknown," thereby avoiding having to assign any dollar value to these business-related debts.

$290,525 on the date they filed their petition since, at that point, only the Final Judgment for $250,000 was entered and not the Final Judgment for Attorney's Fees and Costs approving the additional $95,000. The debtors' position is that, because the exact amount of attorney's fees and costs was not finalized until the state court entered the Final Judgment for Attorney's Fees and Costs, *after* the debtors had filed their petition, this debt was unliquidated and should not count towards the unsecured debt limit in Section 109(e). Essentially, the debtors posit that the final amount of attorney's fees and costs cannot be ascertained for liquidation purposes until a court rules that the requested fees and costs are reasonable.

■ The key issue is whether the debt for attorney's fees and costs was noncontingent and sufficiently liquidated on the petition date to establish or to deny the debtors' jurisdictional eligibility to file this Chapter 13 case. As stated above, to be eligible for relief under Chapter 13, the debtors' unsecured debts must be noncontingent and liquidated in an amount not exceeding $290,525. The analysis of whether a debt, or liability on a claim,[4] is contingent, and therefore excluded from the Section 109(e) unsecured debt calculations, centers on the time when a debtor's liability on that debt or claim becomes

fixed or certain. A debt is not contingent where all events giving rise to a debtor's liability occur pre-petition. *United States v. Verdunn,* 89 F.3d 799, 802 n. 7 (11th Cir.1996) (*citing In re Knight,* 55 F.3d 231, 236 (7th Cir.1995); *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991)).

■ In this case, the debtors' liability for the attorney's fees and costs attached and became fixed when the Final Judgment in the state court litigation was entered against the debtors on July 11, 2003. As the prevailing party, Mr. Murphy was and is entitled to have his attorney's fees and costs paid by the debtors. Indeed, the debtors do not dispute that they were obligated to pay attorney's fees in addition to the judgment amount or that their liability was contingent on the petition date.

■■ Rather, the debtors contend that the debt for attorney's fees and costs was not sufficiently liquidated on the petition date. The Court of Appeals for the Eleventh Circuit in *United States v. Verdunn,* 89 F.3d 799, 802 (11th Cir.1996) defined a liquidated debt as one where it is certain what is owed and *how much is owed. Verdunn,* 89 F.3d at 802 (*citing* BLACK'S LAW DICTIONARY 930 (6th ed.1990) (*emphasis added* )). A debt is considered liquidated where the amount has been made certain "by agreement of the parties or by operation of law." *Id.*[5] Here, the debtor's

---

**4.** Bankruptcy Code Section 101(12) defines the term "debt" as liability on a claim. The term "claim" has been broadly defined and has been held to be "coextensive with the term 'debt.' "[4] *See, generally,* COLLIER ON BANKRUPTCY, p. 101–25, ¶ 101.05[1] (15th Ed.) (*citing Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)).

**5.** In two footnotes, the *Verdunn* court provided instructive examples of both liquidated and unliquidated claims. "Examples of liquidated claims are claims upon promises to pay a fixed [or determinable] sum, claims for mon-

ey paid out, and claims for goods or services to be paid for at an agreed rate." *Verdunn,* 89 F.3d at 802, n. 12 (*citation omitted* ). Examples of unliquidated claims include claims for damages for personal injury, seduction, and libel, "where the elements from which to ascertain the amount of the demand are wholly at large [and the] defendant has no means of knowing in advance of proof what the precise pecuniary damage had been" or what amount could be allowed for pain and suffering. *Id.* at 802, n. 13. "Even the plaintiff, short of an assessment of damages by a jury, cannot give [the defendant] the necessary information. Down to the time of verdict the

argue that a formal adjudication of attorney's fees and costs is a necessary prerequisite to a precise determination of the actual amount owed. However, this same argument was rejected in *In re Wenberg,* 94 B.R. 631 (9th Cir. BAP 1988) *aff'd,* 902 F.2d 768 (9th Cir.1990).

In *Wenberg,* the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals affirmed the decision of the Bankruptcy Court for the Central District of California, which held that certain attorney's fees and costs would be considered liquidated for the purpose of determining debtor eligibility under Bankruptcy Code Section 109(e) where the amount could be easily ascertained by examining the attorney's billing statements. *Wenberg,* 94 B.R. at 632. Like the debtors in the instant case, the debtors in *Wenberg* argued that an award for attorney's fees and costs is subject to a reasonableness determination before it can be deemed liquidated and included in the unsecured debt calculation under Section 109(e). *Id.* at 635. The Bankruptcy Appellate Panel dismissed this argument, finding that the reasonableness of attorney's fees and costs was not relevant to the threshold debt calculations under Section 109(e), and that such determinations are "more appropriately addressed in a proceeding to determine the allowance of a specific claim under § 502 and should be separate from the application of § 109(e)." *Id.*

This court agrees with the Bankruptcy Appellate Panel's approach A judicial assessment of the reasonableness of an attorney's fees is more appropriately characterized as a check and balance against charging excessive or unreasonable fees, than as a mandatory prerequisite to the allowance of fees where, as here, the debtors did not contest the allowability or reasonableness of the fees after receiving the

letter from Mr. Murphy's attorney detailing his hourly fees and costs.

Having determined that an adjudication of "reasonableness" is *not* required in order to deem a debt for attorney's fees and costs liquidated for purposes of eligibility under Section 109(e), the court now turns to the various tests that *should* be employed to determine whether a given debt can be deemed "liquidated." Courts have established various standards in making this determination. In general, courts examine whether: 1) the debt is capable of ready determination and precision through the application of fixed legal standards; *Verdunn,* 89 F.3d at 802; *In re Knight,* 55 F.3d 231, 235 (7th Cir.1995); 2) proving the debt requires a substantial evidentiary hearing to establish the amount versus a simple hearing; *Wenberg,* 94 B.R. at 634–35; and, 3) the amount is dependent on a future exercise of discretion unrestricted by certain criteria. (*Verdunn,* 89 F.3d at 802). Applying any of these tests to the instant case yields the same result: the debt was liquidated prior to the petition date and renders the debtors ineligible for Chapter 13.

■ First, the debtors received a bill requesting fees of $86,792 and costs of $18,600 from Mr. Murphy's attorney well before this bankruptcy case was filed. Thus, the amount of fees and costs was readily determinable. Second, the fact that the debtors and Mr. Murphy's attorney ultimately agreed that the debtors would pay $10,392 less than the total $105,392 initially requested does not undermine the fact that the amount owed was easily ascertainable pre-petition. Debts are re-negotiated downward, both within and outside of the context of bankruptcy. However, any such post-petition adjustment to an amount due and owing as

claim is entirely unliquidated." *Id.* at 802, n. 13 (*citation omitted*).

of the petition date does not render the initial, pre-petition debt unliquidated. Accordingly, the court finds that the amount of the debt could be easily and precisely determined before the debtors filed their Chapter 13 case by referencing the attorney's letter of June 11, 2003.

Moreover, proving a debt for attorney's fees and costs generally does not require a substantial evidentiary hearing to establish the amount due. As a general rule, attorney's fees are determined based upon billing records and affidavits. Only rarely are hearings needed to exactly determine the amount of a fee award and, if one is required, the matter is largely oral argument and simple testimony. In the unlikely event a substantial hearing is needed, the issue of *entitlement* to the fees would more likely be at issue than would a determination of the exact *amount* of fees owed.

Finally, the amount of the debt for attorney's fees and costs was not dependent on any future, or post-petition, exercise of unrestricted discretion by the state court. In the Final Judgment for Attorney's Fees and Costs, the state court judge specifically considered "the guidelines established by the Supreme Court of Florida in *Guaranty Insurance Co. v. Quanstrom*, 555 So.2d 828 (Fla.1990) and in *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla.1985), as well as Rule 4–1.5 of the rules regulating The Florida Bar." (Debtors' Exh. No. 3). In *Rowe*, the Florida Supreme Court adopted a standard,

called the lodestar approach, to assist trial judges in determining reasonable attorney's fees. Under the lodestar method, the number of hours reasonably expended is multiplied against a reasonable hourly rate within the community for similar work. *Rowe*, 472 So.2d at 1151.

In determining attorney fee awards, the Florida Supreme Court directed state courts to apply the factors set forth in Disciplinary Rule 2–106(b)[6] of The Florida Bar Code of Professional Responsibility, as those factors "provide trial judges objective guidance in the awarding of reasonable attorney's fees and allow parties an opportunity for meaningful appellate review." *Rowe*, 472 So.2d at 1152. Significantly, the *Rowe* court stated that the lodestar approach "provides a suitable foundation for an *objective* structure," *Id.* at 1150, and that lodestar results in "an *objective* basis for the award of attorney fees." *Id.* at 1151 (*emphasis added*).

Accordingly, Mr. Murphy's fees and costs were capable of verification against fixed legal standards. The exact amount of this debt was not dependent on any future exercise of unrestricted discretion; courts are restricted to a consideration of the listed factors. Thus, while a verification of the reasonableness of noncontingent attorney's fees may occur post-petition, courts are confined to make such a verification using the explicit, fixed legal standards and objective criteria articulated

**6.** The factors set forth in Disciplinary Rule 2–106(b) are as follows:

    (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

    (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

    (3) The fee customarily charged in the locality for similar legal services.

    (4) The amount involved and the results obtained.

    (5) The time limitations imposed by the client or by the circumstances.

    (6) The nature and length of the professional relationship with the client.

    (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

    (8) Whether the fee is fixed or contingent.

by the Florida Supreme Court. In other words, what discretion a court has in assessing or verifying the reasonableness of an attorney's fees is substantially restricted and is not comparable to the discretion a jury possesses in assessing pecuniary loss for pain and suffering associated with a personal injury.

The court concludes that the attorney's fees and costs owed by the debtors were liquidated as of the petition date. A determination of "reasonableness" is not a prerequisite to including an otherwise noncontingent and unsecured debt for attorney's fees and costs as a liquidated debt under Section 109(e) where that debt is capable of ready and precise determination, requiring little proof, subject to objective and fixed legal standards. Accordingly, by including the attorney fees and costs payable to Mr. Murphy's attorney, the debtors' unsecured debts substantially exceed $290,525, the jurisdictional limit. The debtors are not eligible for Chapter 13 relief. The Trustee's Motion is granted, and Mr. Murphy's Objection is sustained. A separate order consistent with this ruling shall be entered.